LINDSEY v HARPER HOSPITAL

Docket No. 104430. Argued March 5, 1997 (Calendar No. 10). Decided
    July 8, 1997.

    Lanya Lindsey, as personal representative of the estate of Carolyn R.
        Lindsey, deceased, brought a wrongful death action in the Wayne
        Circuit Court against Harper Hospital and others, alleging medical
        malpractice in their failure to diagnose or to appreciate a postsurgi-
        cal infection that led to the decedent's death of the complications.
        The court, Roland L. Olzark, J., denied the defendant's motion for
        summary disposition, holding that the claim was timely because it
        was filed within two years of the issuance by the probate court of
        letters of authority to the plaintiff as personal representative. The
        Court of Appeals, D. E. HOLBROOK, JR., P.J., and HOEKSTRA and D. M.
        BEAGLE, JJ., reversed in an opinion per curiam, holding that the
        claim was barred because it was brought two years after the pro-
        bate court's issuance to the plaintiff of the letters of authority as
        temporary personal representative (Docket No. 169456). The plain-
        tiff appeals.

        In an opinion by Justice WEAVER, joined by Chief Justice MALLETT
        and Justices BRICKLEY and BOYLE, the Supreme Court held:

        MCL 600.5852; MSA 27A.5852, the statute of limitations saving
        provision, began to run when the plaintiff was appointed temporary
        personal representative, barring her claim.

        1. The period of limitation for a medical malpractice action is
        two years from the time a claim first accrues. However, where a
        potential claimant dies within thirty days after the statute of limita-
        tions has run or within the two-year period of limitation, the statute
        of limitations saving provision operates to suspend the running of
        the statute until a personal representative is appointed to represent
        the interests of the estate. The saving provision and the Probate
        Code are intended to work together. The saving provision was
        amended to be consistent with the language of the Revised Probate
        Code, which reflected substantive changes to the responsibility and
        authority of temporary personal representatives. The amendments
        evidence an intent to allow temporary personal representatives to
        perform essentially the same functions and to bear the same
        responsibilities as personal representatives.

2. The letters of authority issued to the plaintiff as temporary personal representative were identical in their delegation of powers as those later issued to her as personal representative. The Revised Probate Code empowers a temporary personal representative to pursue and defend all claims on behalf of an estate. Because there is no constructive difference regarding the authority and responsibility of a temporary personal representative and that of personal representative, the saving provision ran from the time the plaintiff was appointed temporary personal representative.

3. The question at issue is not one that supports prospective application. The plaintiff, by the letters of authority as temporary personal representative and by provisions of the Revised Probate Code, had full authority to commence and maintain actions on behalf of the estate, and did so by limiting claims against the estate. Given her assumption of such control, it is not unfair to require her to pursue claims on behalf of the estate within two years of her appointment as temporary personal representative.

Affirmed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that while the statute of limitations saving provision begins to run when the probate court issues letters of authority to a temporary personal representative, the rule should be given prospective application only. The revisions of the Probate Code since *Szydelko v Smith's Estate*, 259 Mich 519 (1932), while substantial, have not been interpreted by the Supreme Court during the interim. Therefore, the statutory interpretation now set forth provides a new rule. Thus, *Szydelko* should be overruled prospectively. To do otherwise would create a substantial hardship for the plaintiff, who did nothing more than rely on precedent that had been settled for sixty-five years.

The period of limitation for a malpractice action is two years. However, when an action is brought on behalf of a decedent's estate, a personal representative is allowed an additional two years to file after letters of authority have been issued. *Szydelko* supports the conclusion that the additional two years for filing this lawsuit began not when the plaintiff was appointed temporary, but rather when appointed permanent, personal representative. When *Szydelko* was decided, the term "personal representative" had no meaning different from that of "executor" and "administrator." The Court was concerned with gleaning the intent of the Legislature in enacting the tolling provision. Therefore, it examined the Probate Code as it existed in 1932 and saw that various limitations and restrictions had been imposed upon temporarily appointed "special administrators." It concluded that the Legislature intended to toll

the statute of limitations until the appointment of an executor or administrator with general, unrestricted authority. There the law has rested for over forty years. If, during that time, the Legislature ever intended to alter the ruling in *Szydelko,* it certainly had the time to do so.

Complete prospective application generally has been limited to decisions that overrule clear and uncontradicted case law. In determining whether a change in the legal interpretation of a statute should be applied retroactively, the Supreme Court examines the purpose of the new rule, the general reliance on the old rule, and the effect of retroactive application of the new rule on the administration of justice. The administration of justice is not enhanced in this case by now jeopardizing lawsuits filed within two years of appointment of a personal representative if a temporary representative was appointed earlier. If § 5852 is to be interpreted as triggering the two-year limitation period upon appointment of a temporary personal representative, the new rule should be applied prospectively only. Excluded from its scope should be this and all pending cases.

Justice RILEY took no part in the decision of this case.

213 Mich App 422; 540 NW2d 477 (1995) affirmed.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Richard D. Fox* and *Richard Toth*) (*Richard A. Lenter,* of counsel), for the plaintiff.

*John B. DeMoss* for the intervening plaintiff.

*Dykema, Gossett, P.L.L.C.* (by *Daniel G. Wyllie* and *Kathleen McCree Lewis*), for defendant Harper Hospital.

*Charles D. Brown* for defendants Richard Lenaghan, M.D., and Richard Lenaghan, M.D., P.C.

*Wilson A. Copeland, II,* for defendants Robert J. Holmes, M.D., and Arbula, Asfaw & Holmes Cardiovascular & Thoracic Surgeons, P.C.

WEAVER, J. The question presented is whether the plaintiff's wrongful death medical malpractice claim is barred despite the statute of limitations saving pro-

vision of MCL 600.5852; MSA 27A.5852. Specifically, we must decide whether the statute of limitations saving provision began to run when the probate court issued plaintiff letters of authority as temporary personal representative on September 14, 1990, or when the probate court issued plaintiff letters of authority as personal representative on October 9, 1990. We hold that MCL 600.5852; MSA 27A.5852 began to run when plaintiff was appointed temporary personal representative on September 14, 1990, and, therefore, her claim is barred. Further, we hold that this decision is not limited to prospective application, but rather applies to this case, pending cases, and future cases interpreting MCL 600.5852; MSA 27A.5852. Accordingly, the decision of the Court of Appeals is affirmed.

I

The estate of the decedent Carolyn Lindsey filed this wrongful death medical malpractice action in the Wayne Circuit Court. The action alleged that defendant Harper Hospital and other named defendants failed to diagnose or to appreciate a postsurgical infection that occurred between October 1, 1987, and December 17, 1987. These complications led to the amputation above the knee of the decedent's right leg. Mrs. Lindsey died on January 7, 1988, allegedly as a result of the complications.

Plaintiff, decedent's daughter, Lanya Lindsey, petitioned the Wayne Probate Court to be appointed temporary personal representative. The probate court approved the appointment and issued plaintiff letters of authority as temporary personal representative on September 14, 1990. On October 4, 1990, the probate

court appointed plaintiff personal representative of decedent's estate, and issued plaintiff letters of authority as personal representative on October 9, 1990. On October 1, 1992, over two years after the issuance of the September 14, 1990, letters of authority, but within two years of the October 9, 1990, letters of authority, plaintiff initiated this wrongful death medical malpractice action against defendants.

Defendant Harper Hospital moved for summary disposition pursuant to MCR 2.116(C)(7). Defendant asserted that plaintiff's claim was barred by the statute of limitations saving provision, MCL 600.5852; MSA 27A.5852, because the claim was filed more than two years after plaintiff's appointment as temporary personal representative on September 14, 1990. Plaintiff responded that the claim was timely because it was filed within two years of the probate court's issuance of the October 9, 1990, letters of authority as personal representative.

The circuit court denied defendant's motion for summary disposition, but the Court of Appeals reversed and held that plaintiff's claim was barred.[1] This Court granted leave to appeal on October 9, 1996.[2] We affirm the decision of the Court of Appeals.

II

The period of limitation for a medical malpractice action is two years from the time a claim first accrues. MCL 600.5805(4); MSA 27A.5805(4). However, where a potential claimant dies within thirty days after the statute of limitations has run or within

---

[1] 213 Mich App 422; 540 NW2d 477 (1995).

[2] 453 Mich 905. We review motions for summary disposition de novo. *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992).

the two-year period of limitation, the statute of limitations saving provision operates to suspend the running of the statute until a personal representative is appointed to represent the interests of the estate. MCL 600.5852; MSA 27A.5852. The question presented in this case is whether the statute of limitations saving provision began to run when the court issued plaintiff letters of authority as temporary personal representative on September 14, 1990, or when the court issued plaintiff letters of authority as personal representative on October 9, 1990.

### A

In arguing that the statute of limitations did not begin running until the letters of authority for the personal representative were issued, plaintiff relies on *Szydelko v Smith's Estate*, 259 Mich 519; 244 NW 148 (1932).[3] *Szydelko* interpreted the predecessor statutory provisions to the statute of limitations saving provision and Probate Code provisions at issue in the present case.

The statute of limitations saving provision at issue in *Szydelko* stated in pertinent part that the cause of

> action may be commenced by or against the executor or administrator of the deceased person or the claim may be proved as a debt against the estate of the deceased person, as the case may be, at any time within two years after granting letters testamentary or of administration . . . . [1929 CL 13981.]

---

[3] In *Szydelko, supra* at 520, a wrongful death action was filed against the estate of Mrs. Smith. The Smith estate was represented at first by a special administratrix appointed on January 9, 1928, who later became the general executrix on October 2, 1929. The question presented was whether the statute of limitations began to run from her appointment as special administratrix or as general executrix.

To determine whether the Legislature intended that the words "letters testamentary or of administration" to include appointments of special administrators or only appointments of general administrators, *Szydelko* considered the use of the same words in the probate statute.

*Szydelko* found that "the appointment of a special administrator was a matter quite apart from the issuing of 'letters testamentary or of administration.'" *Szydelko, supra* at 522. The Court noted that, unlike the general administrator, the special administrator had no powers of general administration and served solely to conserve the estate until the executor or general administrator was appointed. *Id.* More importantly, a special administrator could not be sued in personal actions accruing before the death of the decedent. *Id.* at 523. *Szydelko* thus concluded that the two-year statute of limitations did not begin to run until the issuance of letters of general administration. *Id.*

We find *Szydelko*'s consideration of Probate Code provisions instructive. However, we also find *Szydelko* not controlling for two reasons. First, the case at bar is distinguishable from *Szydelko* because the instant case involves claims by, rather than against, an estate. Second, there have been significant changes to both the Judicature Act and the Probate Code since *Szydelko* that limit *Szydelko*'s precedential value.

The language addressed in *Szydelko* is inapplicable because MCL 700.175; MSA 27.5175 expressly provides that "[t]he temporary personal representative may commence and maintain actions as personal representative . . . ." The problem addressed in *Szy-*

*delko*, as stated above, was that the estate could not be sued in actions not already pending while under the administration of a special administrator. The Legislature, therefore, left a vacuum of authority, and the *Szydelko* Court was faced with the possibility that an estate could delay the appointment of the general administrator until the two-year period of limitation had run on an unfiled claim. However, we are not faced with a similar problem because the Legislature in the Revised Probate Code expressly authorizes the temporary personal representative to commence and maintain actions on behalf of the estate. MCL 700.175; MSA 27.5175.

Furthermore, in 1988 the statute of limitations saving provision of the Revised Judicature Act was amended to no longer address actions against estates, so *Szydelko* no longer controls the interpretation of the saving provision. Other substantive changes were also made to the probate law that limit *Szydelko*'s applicability. In fact, this Court recognized this limited applicability in *Rhule v Armstrong*, 384 Mich 709, 717; 187 NW2d 223 (1971) (overruled on other grounds). *Rhule* stated:

> All language of the Court in the *Szydelko* case had to do with the filing and disposition of claims in probate against the estates of decedents, and the statutes pertaining thereto, as same stood when the Szydelko claim was filed in 1928 and was disposed of by the Court in 1932.

The Legislature has made significant changes to the authority and responsibility of the temporary personal representative. As addressed in part II(B), temporary personal representatives are by definition personal

representatives,[4] and when a temporary personal representative becomes a personal representative, he is liable as a personal representative from the date of appointment as temporary personal representative.[5] Further, unlike the special administrator under the old probate law, the temporary personal representative may now commence and maintain actions unrelated to the collection of goods, chattels, and debts of the decedent.[6] Thus, we hold *Szydelko* does not control our interpretation of the modern statutes.

B

Because *Szydelko*'s interpretation of the predecessor of the statute of limitations saving provision is not controlling, we are again faced with a question of statutory interpretation regarding when the statute of limitations saving provision began to run in this case. As amended in 1988, MCL 600.5852; MSA 27A.5852 provides in pertinent part:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

The statute has the effect of extending the period of limitation set forth in MCL 600.5805; MSA 27A.5805 where a death occurs either before the period of limitation has run or within thirty days after the period

---

[4] MCL 700.9(3); MSA 27.5009(3).

[5] MCL 700.179; MSA 27.5179.

[6] The probate law in effect in 1932 permitted special administrators to commence and maintain actions *only* for the purposes of collecting the goods, chattels, and debts of the deceased. 1929 CL 15589.

has run. As an exception to the statute of limitations, the saving provision should be strictly construed. *Mair v Consumers Power Co*, 419 Mich 74, 80; 348 NW2d 256 (1984).

Because the term personal representative is not defined in the statute, we examine the Revised Probate Code for a definition. The saving provision of the statute of limitations and the Probate Code are intended to work together to preserve legal actions that survive death and to define the running of the statute of limitations where a person dies before or within thirty days of the running of the period of limitation. Under the rule of construction of statutes in pari materia, it is appropriate to harmonize statutory provisions that serve a common purpose when attempting to discern the intent of the Legislature. *Jennings v Southwood*, 446 Mich 125, 136-137; 521 NW2d 230 (1994); *Wayne Co v Auditor General*, 250 Mich 227, 232-233; 229 NW 911 (1930).

The statute of limitations saving provision of the Revised Judicature Act was amended by 1988 PA 221 to be consistent with the streamlined language of the 1978 Revised Probate Code. *Turner v Mercy Hosps & Health Services of Detroit*, 210 Mich App 345, 351, n 1; 533 NW2d 365 (1995). The Revised Probate Code abandoned "executor and administrator" in favor of the more encompassing title "personal representative." MCL 700.9(3); MSA 27.5009(3). It also replaced the title "special administrator" with "temporary personal representative." MCL 700.174-700.179; MSA 27.5174-27.5179.

This streamlining of the probate nomenclature also reflected substantive changes in the responsibility and authority of temporary personal representatives.

The Revised Probate Code defines "personal representative" to include:

> executor, administrator, administrator with will annexed, administrator de bonis non, a temporary or successor personal representative, and a person who performs substantially the same functions in respect to the estate of a decedent under the law governing their status. [MCL 700.9(3); MSA 27.5009(3).]

Further, the Legislature added an entirely new section to the Probate Code that provides:

> If the temporary personal representative becomes the personal representative, all special requirements of sections 174 to 178 shall be waived and the temporary personal representative shall be accountable as though he were the personal representative from the date of appointment as temporary personal representative. [MCL 700.179; MSA 27.5179.]

We hold that these amendments evidence an intent to allow temporary personal representatives to perform essentially the same functions and to bear the same responsibilities as personal representatives.

C

Our conclusion is consistent with the purposes of the statute of limitations saving provision, MCL 600.5852; MSA 27A.5852, which is intended to preserve actions that survive death in order that the representative of the estate may have a reasonable time to pursue such actions. *Morse v Hayes*, 150 Mich 597, 602; 114 NW 397 (1908). We hold this purpose was met by the appointment of plaintiff as temporary personal representative because letters of authority

issued to her as temporary personal representative stated:

> full power and authority to take possession, collect, preserve, manage, and dispose of all the property of the estate according to law, and to perform all acts permitted or required by statute, court rule, and orders and decrees of this court . . . .

The letters of authority were identical in their delegation of powers as those issued to plaintiff as personal representative a few weeks later, the only difference being that the September 14, 1990, letters of authority included the word "temporary."

Further, as stated above and unlike its predecessor, the Revised Probate Code does not limit the temporary personal representative to pursuit of actions involving the preservation and collection of assets of the estate. Compare 1929 CL 15589 with MCL 700.175; MSA 27.5175. Under the Revised Probate Code, a temporary personal representative is empowered to pursue and defend all claims on behalf of the estate.

Because we find no constructive difference in the Revised Probate Code regarding the authority and responsibility of temporary personal representatives and that of personal representatives, we hold that the statute of limitations saving provision ran from September 14, 1990, when plaintiff was appointed temporary personal representative. Therefore, plaintiff's claim was not timely under MCL 600.5852; MSA 27A.5852.

III

Plaintiff argues that even if this Court holds that the statute of limitations saving provision ran from her appointment as temporary personal representative, that holding should be applied prospectively only. The general rule is that judicial decisions are to be given full retroactive effect. *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986). However, where injustice might result from full retroactivity, this Court has adopted a more flexible approach, giving holdings limited retroactive or prospective effect. This flexibility is intended to accomplish the "maximum of justice" under varied circumstances. *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984), citing *Williams v Detroit*, 364 Mich 231, 265-266; 111 NW2d 1 (1961).

Prospective application of a holding is appropriate when the holding overrules settled precedent or decides an " 'issue of first impression whose resolution was not clearly foreshadowed.' " *People v Phillips*, 416 Mich 63, 68; 330 NW2d 366 (1982), citing *Chevron Oil Co v Huson*, 404 US 97, 106; 92 S Ct 349; 30 L Ed 2d 296 (1971). Although this is the first time this Court has considered whether the 1988 revised statute of limitations saving provision begins to run at the issuance of letters of authority for the temporary personal representative or the personal representative, this is not the type of first-impression question that supports prospective application. As the Court of Appeals persuasively reasoned:

> The fact that a decision may involve an issue of first impression does not in and of itself justify giving it prospective application where the decision does not announce a new rule of law or change existing law, but merely gives an

interpretation that has not previously been the subject of an appellate court decision. [*Jahner v Dep't of Corrections*, 197 Mich App 111, 114; 495 NW2d 168 (1992).]

We do not find that the balance of justice demands prospective application in this case. Though plaintiff's claim may seem unfairly barred by our holding, it cannot be denied that all statutes of limitation set arbitrary time limits for legal claims. Statutes of limitation serve to protect defendants from stale claims. This purpose must be balanced with the purpose of exceptions to statutes of limitation, such as the saving provision. The saving provision preserves a plaintiff's claim, but, as an exception to a statute of limitation, must be narrowly construed. *Mair, supra.*

Plaintiff, by the letters of authority as temporary personal representative and by the provisions of the Revised Probate Code, had full authority to commence and maintain actions on behalf of the estate. Indeed, plaintiff immediately exercised her authority under MCL 700.703; MSA 27.5703[7] as temporary personal representative to limit claims against the estate when she issued notice to all creditors, giving them four months to present their claims against the estate. Given plaintiff's assumption of such control over the estate, it does not seem unfair to accord her the responsibility to pursue claims on behalf of the estate within two years of her appointment as temporary personal representative.

---

[7] Under MCL 700.703; MSA 27.5703, the personal representative shall, and the temporary personal representative may, publish notice to creditors that claims against the estate not presented within four months of publication of the notice will be barred.

IV

Accordingly, the decision of the Court of Appeals is affirmed, and this decision is applied to this case, pending cases, and future cases interpreting MCL 600.5852; MSA 27A.5852.

MALLETT, C.J., and BRICKLEY and BOYLE, JJ., concurred with WEAVER, J.

KELLY, J. I respectfully dissent. I agree with the majority that the 1988 Legislature has amended the Revised Probate Code to expand the authority and the responsibility of a temporary personal representative. Thus, I agree with the conclusion that the statute of limitations saving provision begins to run when the probate court issues letters of authority to a temporary personal representative. However, I would give this rule prospective application only.

The single question in this case is whether the "personal representative" envisioned by Revised Judicature Act § 5852 includes a temporary personal representative. The statute states in pertinent part:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the *personal representative* of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run. [MCL 600.5852; MSA 27A.5852 (emphasis added).]

In this medical malpractice action, plaintiff asserts that the appointment of a temporary personal representative does not trigger the limitation period. She

contends that the complaint was timely filed, because the statutory period began to run on the date she became the "permanent" personal representative. By contrast, defendant argues that the complaint was filed too late, because the statute began to run with her initial appointment as "temporary" personal representative.

The foundation for plaintiff's argument is *Szydelko v Smith's Estate*.[1] It held that the appointment of a "special administrator," the historical predecessor of a temporary personal representative, did not commence the two-year period of limitation. However, the Court of Appeals adopted defendant's viewpoint.[2] In doing so, it distinguished *Szydelko*.

The Court of Appeals stated that plaintiff's reliance on *Szydelko* was misplaced. It reasoned that *Szydelko* involved a suit against, not on behalf of, an estate. Also, the tolling statute and an assortment of probate statutes defining the powers of estate fiduciaries had been amended since *Szydelko*.[3]

Although I agree with the Court of Appeals that the Probate Code has been substantially revised since that time, the revision has not been interpreted by this Court during the interim. Therefore, the statutory interpretation that this Court now gives sets forth a new rule. I cannot agree with the majority's conclusion that this case is not a case in which prospective application of the law should apply. *Jahner v Dep't of Corrections*, 197 Mich App 111, 114; 495 NW2d 168 (1992).

---

[1] 259 Mich 519; 244 NW 148 (1932).

[2] 213 Mich App 422; 540 NW2d 477 (1995).

[3] 213 Mich App 427-428.

Thus, I would overrule *Szydelko* prospectively. To do otherwise would create a substantial hardship for plaintiff, who did nothing more than rely on precedent that had been settled for sixty-five years.

Neither party disputes the facts of the case. Carolyn Lindsey died from complications following surgery performed at defendant Harper Hospital. Plaintiff, Lindsey's daughter, is the personal representative of the estate. The lawsuit is a malpractice/wrongful-death action against the hospital and several of its doctors.

The period of limitation for a malpractice action is two years. MCL 600.5805(4); MSA 27A.5805(4). However, when an action is brought on behalf of a decedent's estate, MCL 600.5852; MSA 27A.5852 is triggered. It allows a "personal representative" an additional two years to file after letters of authority have been issued.

The parties agree that the date of the first alleged malpractice was October 1, 1987. Consequently, October 1, 1989, became the deadline for filing a lawsuit. However, because this is a malpractice claim brought by an estate as a wrongful death action, the tolling provision is triggered. We have been asked to interpret the tolling provision.

For purposes of comparison, before 1988 the statute read:[4]

---

[4] The 1988 amendment was made effective to estates commenced after January 1, 1989, and applied to this case. House Bill 5044 stated:

The bill would amend the Revised Judicature Act to delete a provision that establishes a statute of limitations on claims against estates. Currently, an action "by or against the executor or administrator" must be commenced within two years after letters of authority are issued, although the period of limitations has run, but

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by or against the executor or administrator of the deceased person or the claim may be proved as a debt against the estate of the deceased person, as the case may be, at any time within 2 years after letters testamentary or letters of administration are granted, although the period of limitations has run, subject to the limitations provided in section 20 of chapter 8 of Act No. 288 of the Public Acts of 1939, being section 708.20 of the Compiled Laws of 1948. But no executor or administrator shall bring an action under this provision unless he commences it within 3 years after the period of limitations has run. [1961 PA 236.]

The earlier version of the statute as well as the amended version is a saving provision designed to extend the period of limitation where death has occurred. Essentially, MCL 600.5852; MSA 27A.5852 adds three years to the underlying statutory period of limitation wherever a party dies before the statute runs. Hence, in a medical malpractice case, where the decedent dies within two years after the act of malpractice, the tolling provision extends the period of limitation another three years. *Hardy v Maxheimer*, 429 Mich 422; 416 NW2d 299 (1987); *Hawkins v Regional Medical Laboratories, PC*, 415 Mich 420; 329 NW2d 729 (1982).

In the present case, suit was filed on October 1, 1992. Plaintiff contends that letters of authority were

---

cannot be brought more than three years after the period of limitations has run. The bill would allow such an action, with those limitations, only by—and not against—the personal representative. [House Legislative Analysis, HB 5044, May 31, 1988.]

However, the earlier language, in effect at the time of decedent's injury and death, is important in interpreting the 1988 act.

issued to her appointing her as permanent personal representative of her mother's estate on October 9, 1990. She does not dispute the fact that letters of authority were issued appointing her temporary representative on September 14, 1990. Her position is that that appointment did not trigger the statutory period. Therefore, plaintiff argues, this lawsuit was timely, having been brought within the two years of the court's granting her the letters of authority as permanent personal representative.

Defendant, however, contends that the two-year period stated in the saving provision began to run when the letters of authority were first issued. Thus, defendant argues that the present action is barred and that plaintiff's reliance on *Szydelko* was misplaced because that was an action against an estate and not by an estate. In order to fully comprehend the reason why the rule established by this Court today should apply prospectively, it is necessary to look at this Court's decision in *Szydelko*.

On January 4, 1928, Mr. Szydelko was killed instantly when struck by a truck driven by an employee of Hattie B. Smith. Ms. Smith herself died four days later on January 8, 1928.[5] One day after her death, a "special administratrix" was appointed for her estate. Then, twenty-one months later, on October 2, 1929, that same person was appointed "general executrix." The Szydelko estate filed suit against the Smith estate on September 4, 1931. However, by then, the period of limitation for a personal injury case had expired. Nevertheless, the tolling provision

---

[5] The opinion does not indicate whether Smith's death was related to the accident.

comparable to the current RJA § 5852 applied to actions against an estate. 1929 CL 13981.

In short, excepting antiquated terminology and the possibly important distinction that *Szydelko* involved a suit against an estate, the issue in *Szydelko* was the same as in the present case: Did the extra two years for filing commence with the appointment of the special administratrix (now temporary personal representative) or with the appointment of the general executrix (now personal representative)?

The *Szydelko* Court held that the two years did not begin to run until the fiduciary was appointed general executrix. That meant that the suit was not barred by the statute of limitations. The key to the Court's holding was 1929 CL 15589:

> An administrator . . . shall collect all the goods, chattels and debts of the deceased, and preserve the same for the executor or administrator who may afterwards be appointed . . . . All personal actions, the cause of which does by law survive and which may be pending either for or against the intestate of such special administrator, may be proceeded with and be prosecuted by or against such special administrator . . . .

Taking note of the word "pending" in the statute, the *Szydelko* Court interpreted the statute as meaning that a special administrator could defend actions filed before the decedent's death. It could not be made the defendant in any new lawsuit. Unfiled litigation would have to await the appointment of a general administrator or executor. Therefore, the Court concluded:

> [U]nder the probate statutes of this State it must be held that the two-year limitation period does not begin to run

until letters of general administration have been issued. [*Szydelko, supra* at 523.]

*Szydelko* thus supports the conclusion that the additional two years for filing this lawsuit began not when the plaintiff was appointed temporary, but rather when appointed permanent, personal representative.

The terminology changes between 1932 and the present should not affect the analysis. While it is true that RPC § 175 allows temporary personal representatives to file lawsuits,[6] the current language is not materially different from 1929 CL 15589.[7] Both the former and the current provisions observe a distinction between suits commenced by the temporary fiduciary and "personal actions" (apparently lawsuits initiated during the decedent's lifetime) that were already "pending." But in that category too, the former statute and the current one are nearly identical.[8]

The *Szydelko* case was problematic because it was a postdeath lawsuit against an estate. It was the one

---

[6] "The temporary personal representative may commence and maintain actions as personal representative . . . ." RPC § 175.

[7] "An administrator . . . may commence and maintain actions as an administrator . . . ." 1929 CL 15589.

[8] 1929 CL 15589 provided:

All personal actions, the cause of which does by law survive and which may be pending either for or against the intestate of such special administrator, may be proceeded with and be prosecuted by or against such special administrator . . . .

Similarly, RJA § 175 provides:

All personal actions, the cause of which by law survives and which may be pending either for or against the deceased, may be proceeded with, and be prosecuted by or against, the temporary personal representative . . . .

type of lawsuit that special administrators (now temporary personal representatives) were not empowered to deal with. No one was to be sued until a (permanent) administrator or executor was appointed. This Court recognized that a lawsuit could be evaded altogether if an administrator or executor were sought only after expiration of the combined length of the statute of limitations plus two years. The easy solution for the *Szydelko* Court was to hold that the two additional years did not begin until the permanent fiduciary had been appointed. That is how *Szydelko* interpreted what is now RJA § 5852. Although the problem arose because of a suit filed against an estate, it is important to note that the *Szydelko* Court did not limit its interpretation of the tolling statute to that context.

When *Szydelko* was decided, the term "personal representative" had no meaning different from that of "executor" and "administrator." The Court was concerned with gleaning the intent of the Legislature in enacting the tolling provision. Therefore, it examined the Probate Code as it existed in 1932 and saw that various limitations and restrictions had been imposed upon temporarily appointed "special administrators." The conclusion was that the legislative intent was to toll the statute of limitations until the appointment of an executor or administrator with general, unrestricted authority.

There the law has rested for over forty years. If, during that time, the Legislature ever intended to alter the ruling in *Szydelko*, it certainly had the time to do it. Plaintiff's argument is that, if the Legislature had wanted to change the outcome in *Szydelko*, it would have revised both the tolling provision and the Pro-

bate Code. Because it did not do so, it was reasonable for plaintiff to rely on the legal interpretation in *Szydelko*.

However, in 1978, the Legislature revised the Probate Code. In that revision, the term "personal representative" was introduced, but it was a term used in a generic sense, rather than to connote a specific status, position, or rank. MCL 700.9(3); MSA 27.5009(3).

The 1978 amendments did not alter either the wrongful death act or the RJA § 5852 tolling provision, which is the focus of this appeal. The legislative intent behind 1978 PA 642 was to revise the Probate Code and not to change the statutes of limitations or their tolling provisions. Although the amendments authorized a temporary personal representative to commence a lawsuit, it does not follow that RJA § 5852 was implicitly amended or that *Szydelko* was legislatively overruled.

In 1985, the Legislature rewrote the wrongful death act and added some special provisions to the Probate Code. Again, neither the statute of limitations nor the RJA § 5852 special tolling provisions were amended.

In 1988, the Legislature did amend RJA § 5852. The amendment came ten years after the major revision of the Probate Code, six years after *Hawkins*,[9] and three years after the revision of the wrongful death

---

[9] *Hawkins, supra,* overruled *Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971). In that case, the Court stated:

> Therefore, MCL 600.5852; MSA 27A.5852 operates to extend the time in which to bring such suits. That statute, quoted above, gives the fiduciary an additional two years from the date of issuance of letters testamentary in which to bring suit provided that, in any event, the fiduciary brings suit not more than three years after the limitations period has run. [*Hawkins* at 438.]

act. Thus, the amendment was not contemporaneous with any of the unrelated statutory amendments that the Court of Appeals held require disregarding *Szydelko*'s interpretation of the direct predecessor of RJA § 5852. Despite the fact that the 1988 amendment did replace the terms "executor" and "administrator" with the more modern terms "personal representative," there is no reason to conclude that the Legislature intended any change in the tolling provision. The only real change made was to render the statute inapplicable to claims filed against estates. That type of action is now governed by MCL 700.703; MSA 27.5703.

The interpretation of the act given by the *Szydelko* Court, where suit was brought against an estate, is no less valid when suit is brought by an estate. The internal language of the act does not make its interpretation dependent upon whether the estate is the plaintiff or the defendant. Distinctions continue to exist between those who are appointed only temporarily to conserve or protect assets and those who receive a permanent appointment to handle all an estate's affairs. Hence, the *Szydelko* ruling continues to provide a rational and sensible interpretation of RJA § 5852. I find that plaintiff's reliance on *Szydelko* is not misplaced. However, I think that the time has come to overrule *Szydelko*.

The *Szydelko* holding was motivated by concern that estates could avoid suit by delaying the appointment of a permanent fiduciary. The present 1988 amendments of the tolling statute and the Revised Probate Code erase that concern. 1988 PA 221 deleted from the tolling statute all mention of actions against an estate. At the same time, 1988 PA 222 significantly revised the code provisions dealing with

claims against estates. Thus, it appears that the current provisions force a temporary personal representative to deal with claims against the estate. See RPC §§ 703, 710 and 712. In any event, deletion from RJA § 5852 of any mention of claims against an estate assures that the *Szydelko* dilemma cannot reoccur. That being the case, the rationale for *Szydelko* no longer exists.

The general rule is that judicial decisions are to be given complete retroactive effect. *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986). However, the Court has often limited the application of decisions that have overruled prior law or reconstrued statutes. *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984). Complete prospective application has generally been limited to decisions that overrule clear and uncontradicted case law. *Id.* at 361, 363.

In determining whether a change in the legal interpretation of a statute should be applied retroactively, the Court examines three factors: (1) the purpose of the new rule, (2) the general reliance on the old rule, and (3) the effect of retroactive application of the new rule on the administration of justice. *People v Young*, 410 Mich 363, 366; 301 NW2d 803 (1981). Furthermore, this Court has stated that "[a] rule of law is 'new' . . . either when an established precedent is overruled or when an issue of first impression is decided which was not adumbrated by any earlier appellate decision." *People v Phillips*, 416 Mich 63, 68; 330 NW2d 366 (1982).

In this case, defendant advocates a change in the law in order to enjoy the benefit of a limitation defense that was not available under the rule set forth

in *Szydelko*. This suit was filed two years and two weeks after plaintiff was appointed temporary personal representative. Hence, defendant insists that plaintiff's medical malpractice claim be barred.

Defendant's is a technical interpretation of the statute. Thus, it is hard to identify any purpose behind the new rule defendant advocates other than to clarify a technical rule of law (i.e., Does appointment of a temporary personal representative now trigger the two-year limitation period of this statute?). Dismissing a medical malpractice wrongful death claim to clarify this issue extends a benefit to defendant far beyond the merits of the issue or the purpose for the new rule.

I have already alluded to the general reliance placed upon the rule in *Szydelko*. Someone searching for the effect of death upon the limitation period would find at § 5852 in the RJA that a personal representative has two years after appointment to file suit. It makes no reference to a temporary personal representative. Further amplification of this section in the annotations or through the Shepardization of cases would disclose the *Szydelko* case. Its holding would show that the two-year period runs from the appointment of the permanent personal representative of decedent's estate. One could be expected, therefore, to place reliance upon the only precedent on point, a holding unchallenged for the last sixty-five years.

The administration of justice is not enhanced by our now jeopardizing lawsuits filed within two years of appointment of a personal representative if a temporary representative was appointed earlier.

Consequently, if § 5852 is now to be interpreted as triggering the two-year limitation period upon

appointment of a temporary personal representative, the new rule should be applied prospectively only. Excluded from its scope should be the present and all pending cases.

I would overrule *Szydelko*. However, I would hold that this plaintiff was entitled to rely on it for the proposition that RJA § 5852 would be triggered two years after she was appointed (permanent) personal representative. Therefore, I would reverse the Court of Appeals decision and allow plaintiff to go forward with her lawsuit.

CAVANAGH, J., concurred with KELLY, J.

RILEY, J., took no part in the decision of this case.